## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| AIKINS FRIMPONG, | ) |
| | ) |
|        Petitioner, | ) |
| | ) |
| vs. | )   CIVIL NO. 08-489-GPM |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
|        Respondent. | ) |

# MEMORANDUM AND ORDER

**MURPHY, District Judge:**

Petitioner, Aikins Frimpong, seeks a writ of habeas corpus. The United States has responded to his petition and moved to dismiss it. For the reasons set forth below, the petition is dismissed.

### FACTUAL BACKGROUND

In his short petition titled "Motion: Request Immediate Release," Frimpong states that he was released from the Federal Correctional Institution in Pekin, Illinois, on May 9, 2008. He was immediately arrested by the Bureau of Immigration and Customs Enforcement ("the Agency") and remains in its custody. Frimpong does not state any legal basis supporting his petition for release except for the assertion that at the time he was sentenced to a federal drug trafficking crime, the Presentence Investigation Report ("PSR") prepared by a United States Probation Officer in the Southern District of Iowa stated the Agency "indicated they will not file a detainer." Frimpong includes with his petition two letters from attorney Alfred E. Willett. The first, dated September 27, 2007, indicates that the attorney would be researching Frimpong's file for information regarding his detention. The second, dated November 16, 2007, encloses a copy of Frimpong's plea

agreement on his underlying federal criminal conviction in the Southern District of Iowa. Attorney Willett emphasizes the statement in the PSR that the Agency "indicated they will not file a detainer" and the PSR's statement that Frimpong "is now a legal permanent resident of the United States."[1]

Frimpong also includes a copy of an order from the United States District Court for the Southern District of Iowa denying two motions requesting immediate release from Agency custody. That court denied Frimpong's motions for lack of jurisdiction because his custody in Illinois was not pursuant to an order of that court, and therefore was not subject to collateral attack under 28 U.S.C. § 2255. The court informed Frimpong that he must file a petition for writ of habeas corpus under 28 U.S.C. § 2241 in the district in which he is incarcerated—the Southern District of Illinois. Frimpong filed the instant petition on July 8, 2008.

This Court completed its threshold review of the petition on September 9, 2008 (Doc. 9) and ordered the United States to respond to the petition. The United States filed both a response and a motion to dismiss the petition indicating the following: Frimpong is a native and citizen of Ghana who entered the United States at Los Angeles, California, on or about September 20, 1976, as a nonimmigrant visitor with authorization to remain in the United States for a temporary period not to exceed March 20, 1977 (Doc. 21, Exh. 1, Declaration of Marva Michelle Hamilton). Frimpong remained in the United States beyond this period. On December 18, 1979, Frimpong filed an application for permanent residency (Doc. 19, Exh. C). There is no indication in the record that this application was granted, but in October 1989 Frimpong was granted "Temporary Resident Alien" status (Doc. 19, Exh. B). According to the Declaration of Marva Michelle Hamilton, Supervisory Adjudication Officer with the United States Citizenship and Immigration Services ("USCIS"), after

---

[1] A copy of the PSR appears in the record at Doc. 20, Exh. M, p. 1.

the October 1989 grant of Temporary Resident Alien Status, Frimpong was required to file an application for adjustment to "lawful permanent resident" status (form I-698) within 43 months. He never filed the appropriate form, and, therefore, he never became a lawful permanent resident of the United States (Doc. 21, Exh. 1).

The record indicates that on July 18, 2002, Frimpong was charged as deportable by the Agency based on (1) his non-citizen status and (2) his June 18, 2002, conviction in a Scott County Iowa District Court for possession of cocaine, for which he was sentenced to three years and 360 days imprisonment (Doc. 19, Exh. E).

On February 2, 2005, Frimpong pleaded guilty in the United States District Court for the Southern District of Iowa to one count of conspiracy to distribute crack cocaine (Doc. 19, Exh. D, p. 1). He was sentenced to 86 months imprisonment but was given credit to his sentence for time served in state custody since February 2002 (Doc. 19, Exh. D, p. 2).

The plea agreement, signed by the Plaintiff, states:

> This agreement does not limit, in any way, the right or ability of the government to investigate or prosecute the defendant for crimes occurring outside the scope of this agreement. Additionally, this agreement does not preclude the government from pursuing any civil or administrative matters against the defendant, including, but not limited to civil tax matters and civil forfeiture which arise from or are related to, the facts upon which this investigation is based.

(Doc. 19, Exh. L, ¶ 17). The plea agreement is silent as to Frimpong's immigration status.

A warrant for Frimpong's arrest was issued by the United States Department of Homeland Security ("Homeland Security") on July 18, 2002 (Doc. 19, Exh. F). An attached certificate of service indicates that Frimpong was served the warrant on May 12, 2008 (Doc. 19, Exh. F). On May 9, 2008, Frimpong was released from Federal Bureau of Prisons custody to Agency custody (Doc. 19, Exh. G).

On June 11, 2008, the Agency issued a "Final Administrative Removal Order," in which an immigration officer found that Frimpong is neither a citizen of the United States nor a lawfully admitted permanent resident (Doc. 19, Exh. H). The officer further found that Frimpong had been convicted of an aggravated felony, making him ineligible for relief from removal and that Frimpong was therefore deportable as an alien convicted of an aggravated felony under 8 U.S.C. § 1227(a)(2)(A)(iii). Frimpong was ordered removed from the United States to Ghana.

On July 24, 2008, the Agency sent Frimpong a letter notifying him of its intent to terminate his status as a temporary resident alien. The letter indicated that Frimpong would, however, be allowed to submit evidence in opposition to the proposed termination of his temporary resident status. Frimpong was granted 30 days in which to submit evidence that he had applied for permanent resident status prior to May 17, 2002 (Doc. 19, Exh. I).

On September 9, 2008, the Agency issued a "Notice of Termination of Status As Temporary Resident," indicating its denial of Frimpong's application for status as a temporary resident of the United States. The Notice states that in response to the July 24, 2008, letter, Frimpong submitted evidence, none of which indicates that Frimpong had filed an Application to Adjust Status from Temporary to Permanent Resident within the required time frame. The notice informed Frimpong that he was entitled to appeal this decision to the Administrative Appeals Office within 30 days (Doc. 19, Exh. J).

On September 10, 2008, the Agency issued a "Notice to Appear at a Removal Proceeding" (Doc. 19, Exh. A) and a notice of custody determination indicating that Frimpong would be detained in Agency custody, pursuant to section 236 of the Immigration and Nationality Act (8 U.S.C. § 1226), pending final determination of removal by an immigration judge (Doc. 19, Exh. K). Frimpong acknowledged receipt of these notifications on September 11, 2008 (Doc. 19, Exhs. A, K).

In its motion to dismiss, the United States argues that the petition should be dismissed for three reasons: (1) lack of jurisdiction (because Frimpong failed to name his custodian as a respondent), (2) failure to exhaust his administrative remedies, and (3) because Frimpong is lawfully detained under the Immigration and Nationality Act.

**ANALYSIS**

The Attorney General is required to take into custody an alien who is "deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(iii)."[2] 8 U.S.C. § 1226(c). *See also Gonzalez v. O'Connell*, 355 F.3d 1010, 1013 (7th Cir. 2004). After the Agency takes an alien into custody and orders him mandatorily detained under 1226(c), a *Joseph* hearing before an Immigration Judge is provided so that the alien may challenge his section 1226(c) detention. *Gonzalez*, 355 F.3d at 1013 (quoting *Denmore v. Kim*, 538 U.S. 510 (2003)). The detainee may avoid mandatory detention "by demonstrating that he is not an alien, was not convicted of the predicate crime, or that the INS is otherwise substantially unlikely to establish that he is in fact subject to mandatory detention." *Denmore*, 538 U.S. at 514 n.3.

The statute itself limits judicial review of an order of mandatory detention: "The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole." 8 U.S.C. § 1226(e). The Seventh Circuit has interpreted this passage to allow federal courts the power to review *constitutional* challenges to the statute. *Gonzalez*, 355 F.3d at 1014 (citing *Denmore*, 538 U.S. at 531). In *Gonzalez*, while the Seventh Circuit clearly stated that it had jurisdiction to hear

---

[2] Section 1227(a)(2)(A)(iii) authorizes removal for "any alien who is convicted of an aggravated felony at any time after admission."

constitutional challenges, the Court seemed to indicate that other exercises of the Attorney General's "discretionary judgment," by the terms of the statute, are not subject to a federal court's review. *Id*.

Frimpong does not raise any argument that his current detention is unconstitutional. By the terms of the statute, the Court could find that it lacks subject matter jurisdiction to review the Attorney General's detention of Frimpong pending removal proceedings. The Seventh Circuit, however, has frequently found jurisdiction pursuant to 28 U.S.C. § 2241 to review discretionary decisions under section 1226. *See Denmore*, 538 U.S. at 531, *Gonzalez*, 355 F.3d at 1014; *Parra v. Perryman*, 172 F.3d 954 (7th Cir. 1999). Thus, the Court has reviewed the merits of the petition.

*Frimpong's detention is mandatory under the statute*

The record indicates that Frimpong never became a lawful permanent resident of the United States because he failed to file an application for adjustment from his temporary resident alien status (Doc. 21, Declaration of Marva Michelle Hamilton). After Frimpong's conviction and incarceration, Homeland Security issued a warrant for Frimpong's arrest (Doc. 19, Exh. F). Later, Frimpong was given the opportunity to provide evidence that he applied for permanent resident status prior to May 17, 1992 (Doc. 19, Exh. I). On September 9, 2008, Frimpong's status of temporary resident was terminated because he did not submit any evidence that he filed an application for permanent resident status (Doc. 19, Exh. J). He was ordered detained under section 1226(c) pending removal proceedings before an Immigration Judge (Doc. 19, Exh. K).

Frimpong was convicted in 2005 of conspiracy to distribute crack cocaine in violation of 21 U.S.C. §§ 841(b)(1) and 846. The Immigration and Naturalization Act defines "aggravated felony" as, *inter alia*, "illicit trafficking in a controlled substance . . . including a drug trafficking crime" as defined in 18 U.S.C. § 924(c). 8 U.S.C. § 1101(a)(43)(B). Section 924(c) of Title 18 defines drug trafficking crime as any felony punishable under 21 U.S.C. 801 *et seq*., which includes Frimpong's

conspiracy to distribute crack cocaine. Thus, Frimpong's conviction for an aggravated felony renders his detention mandatory pursuant to 8 U.S.C. § 1226(c).

Frimpong's argument is simply that the statement in the PSR that the Agency would not file a detainer renders his current detention unlawful. His petition provides no other legal basis for his release. In his response to the United States's motion to dismiss, Frimpong vaguely suggests that his cooperation with the government in his criminal case entitles him to extraordinary treatment. He states, "I deserve some kind of reward from the Government of the United States of America, which I think its fair to ask, your Honor . . . I was in segregation (SHU) for 2 months for helping the Government of the United States of America . . . to get what they want" (Doc. 30, pp. 2-3).

There is nothing in the record aside from the statement in the PSR to indicate that there was some agreement between Frimpong and the Agency that they would not seek detention. The plea agreement specifies that the government was not precluded from pursuing other civil matters against Frimpong.

As Respondent points out, 28 C.F.R. § 0.197 states:

> The Immigration and Naturalization Service shall not be bound, in the exercise of its authority under the immigration laws, through plea agreements, cooperation agreements, or other agreements with or for the benefit of alien defendants, witnesses, or informants, or other aliens cooperating with the United States Government, except by the authorization of the Commissioner of the Service or the Commissioner's delegate. Both the agreement itself and the necessary authorization must be in writing to be effective, and the authorization shall be attached to the agreement.

Quite simply, there is no legal basis to support Frimpong's release. Frimpong's reliance on a statement, made by a non-agency probation officer in a Presentence Investigation Report, that the Agency would not file a detainer against him provides no binding promise. Further, that statement is undermined by the explicit provision in the plea agreement regarding the government's authority

to pursue other matters against Frimpong and by the regulations governing plea agreements with non-citizen criminal defendants.

Finally, the Agency either has afforded or will afford Frimpong a hearing before an Immigration Judge prior to his removal (Doc. 19, Exh. A). Frimpong may raise these questions at that hearing. If he is unsatisfied with the outcome of that proceeding, he will have the chance to appeal the decision consistent with agency regulations.

*Lack of Jurisdiction for Failure to Name Immediate Custodian as Respondent*

United States Code, Title 28, Section 2242 directs that an application for writ of habeas corpus shall allege the "the name of the person who has actual custody" over the petitioner. "[L]ongstanding practice confirms that in habeas challenges to present physical confinement-'core challenges'-the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2006). Applying *Padilla*, the Seventh Circuit has upheld the dismissal of a habeas petition where the petitioner named an Immigration and Customs official as respondent, but not the warden of the facility where he was housed while awaiting removal (because he failed to name the person who had "direct control" over his "day-to-day activities"). *Kholyavskiy v. Achim*, 443 F.3d 946, 954 (7th Cir. 2006). The Court noted that the named respondent's "authority to arrange for the petitioner's release does not make her his immediate custodian for habeas purposes." *Id.* at 953.

Frimpong named the United States of America as the Respondent. Frimpong is currently housed in the Tri County Detention Center in Ullin, Illinois. The proper respondent, therefore, is the warden of that facility.

*Failure to Exhaust Administrative Remedies*

Frimpong's failure to complete the agency's administrative review of his detention prior to

filing suit provides another basis for dismissal of the petition. The Seventh Circuit has held that where a petitioner challenges the statute detaining him as unconstitutional, he does not have to exhaust his administrative remedies. *Gonzalez*, 355 F.3d at 1016. Where, however, a petitioner has a colorable argument that he is being detained in contravention of the statute and "a reasonable prospect" of relief under the agency procedures, he "may not skip the administrative process and go straight to federal court." *Id.* at 1018; *Mojsilovic v. INS*, 156 F.3d 743, 748 (7th Cir. 1998) (agency review required "when the petitioner's claim involves procedural errors correctable by the administrative tribunal").

## CONCLUSION

In light of the foregoing, the motion to dismiss (Doc. 24) is **GRANTED**, and the petition (Doc. 1) is **DISMISSED on the merits**. The Clerk is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**

DATED: 1/9/09

s/ *G. Patrick Murphy*
G. Patrick Murphy
United States District Judge